their argument in SM Kids v. Google, 19-2547. Good morning, Your Honors, good morning, Mr. Court. My name is John Maliari, Counsel for the Plaintiff Appellant, SM Kids. The central question on this appeal is whether the district court erred when it treated a question of contractual standing, whether SM Kids has rights as successor to Stuller Productions as a jurisdictional question. That question is clearly a merits question and should never have been plucked out of  Absolutely, Your Honor. All the elements of Article 3 standing under Spokio are clearly pleaded. And so the judge found nonetheless that because there was no trademark, enforceable trademark, that you had no standing. So I could understand why you might not get any damages and you might not get an injunction, but I can't understand why you don't have standing. Your Honor, that's exactly the issue on appeal. It seems that the district court has confused Article 3 standing, can we be in this court, with this concept of contractual standing, which over time, and in fact as recently as last November in the Second Circuit's Platinum Montort case, which Google sent as an additional authority to this court, has adopted this clear view that contractual standing is a merits question. Instead, we were unfairly prejudiced by having this issue plucked out, subject to early discovery, subject to an early decision, and subjected to the trial standard of evidence, preponderance of the evidence. I'm just wondering if you, is there anything that would prevent us from nevertheless going to the merits? I mean, it's a, you know, pretty straightforward set of alleged facts. Everything would prevent it, Your Honor, respectfully, because we would be completely deprived of the process under which we're supposed to proceed. Your Honor, that would put us straight into the Palin v. New York Times case. So the rubric is this, it should have been a 12B6 issue, and if it's a 12B6 issue, this you cannot hold an evidentiary hearing on a 12B6 matter and rule on it. In fact, the Palin court said, although there's wide discretion for a district judge to control the pace of the case, it would offend Rule 12B6. That's my question. This is on a motion to dismiss. It's on a motion to dismiss pursuant to Rule 12.1. All right, 12, so, and let's say that we agree with you that the district court erred with respect to when it dismissed the lack of jurisdiction. Couldn't we, based on the complaint before us, deal with the underlying merits issue? Wasn't that briefed? I don't think the merits issue, Your Honor, the court certainly merits in the sense of just reviewing, you know, we're all judges, we can review a complaint. Could you sustain the complaint on the pleading standard? Absolutely. That absolutely could happen, and the court should sustain the complaint on the pleading standard. Excuse me. Without getting to the ultimate decision, could we review the complaint to see if it makes out a plausible claim? You absolutely could, and under the Beasley case, which is a case very similar to this, one single allegation of an assignment of a contract is enough to make it plausible. Plausibility here is met in spades. On the contrary, we have a breach of contract case. We're not asserting a trademark infringement case. This is a case of a breach of contract. We've fled the elements under New York law. We've fled our standing under New York law, and the court should absolutely sustain the complaint. And in fact, even if the court doesn't do that, let's say the court only vacates, we are asking, as in the Novartis case, that the court at least remand with instructions, because what could— One element of the breach of contract claim, at least under the circumstances of this case, is that you need to show that the Google Smart was continuously in use. Is that correct? I don't believe that's an element of a contract claim, no, Your Honor. How about this contract claim? Do we need to plead that it's in use? I believe it's adequately pled that it's in use. We don't need to prove it, and that's what the district court did. The district court required us to prove it by a preponderance of the evidence, not even, Your Honor, by a pretrial standard such as a motion for summary judgment. The Sick Guyot case from the Eastern District of New York is really exactly like this case, and there the court held that if you're going to argue assignment in gross, as they did, or some disuse of the mark or some interruption in the use, that question is too entwined with the merits. That case is really the most instructive case. That decision can't be made at the pleading stage. At this stage, we're talking about whether we've adequately pleaded the complaint and whether it's plausible, and the cases abound. Novartis says that from the Eighth Circuit. Lindsay says that from the Ninth Circuit. Cotton versus certain underwriters from the Fifth Circuit. All of those cases being cases about whether this is a jurisdictional issue or a merits issue. So, Your Honor, if the court were to remand finding that this is a 12B6 issue, we think the court should go a step further, and as in Novartis, provide instructions on erroneous rulings that could just end up back in this court again if the court below now decides on a Rule 12B6 motion. There were three critical errors made on the use and commerce analysis. One is the opinion only focused on whether business plans that SM Kids had came to fruition. That's not a use and commerce analysis. The analysis should have focused on the then-existing website. Was it used in commerce? And we're asking for an instruction that the use and commerce analysis that is based on whether plans came to fruition is improper. We also think it's improper. Tell me how you understand the use and commerce standard to function. Does it have to be continuous? Can there be breaks? If so, how long can they be? Your Honor, thank you. There certainly has to be a showing of use and commerce to preserve your mark, but it's also clear in cases of bound that interruptions in the use and commerce can still continue the goodwill of the mark. In fact, there are three key cases on this. Mary Hall, a case where the mark holder was in bankruptcy, a 1965 Southern District case that's been cited with approval, a one-year cessation of the mark, a three-year cessation of the mark in Dial a Mattress, which is an Eastern District in New York case, and in Saratoga, Vichy, a Second Circuit case, a seven-year cessation of the mark. The duration of the cessation is not what's relevant. It's whether the goodwill is attached. And in our case... What do you mean, whether the goodwill is attached? Whether when the mark is resumed, the public still associates the mark with the goodwill of the business. In our case, for example, we've provided evidence... Under that standard, you could have a cessation for years. Well, the longest one we have an example of is Saratoga, Vichy. I'm not... The interruption here, the cessation of use, was only for a one-year period from 2014 to 2015, so we don't need to go there. The fact is, when we put our new content up, the record shows that we had hundreds of thousands of hits of unique users who came back to the Google's website, so there still was goodwill in the mark. And we contend that an instruction to the court, if we're going to go back down, to focus on the existing website, not on sales, but on the goodwill of the mark as appropriate. But just to get back to standing... Thank you. Your rights and obligations... The rights and obligations in this case came from the contract itself. That's correct, Your Honour. And there is no dispute that the Google trademark existed at the time that the contract was executed? Absolutely. It could not be a dispute, or Google never would have entered into a co-existence agreement. Thank you. Thank you, Your Honour. May it please the Court, my name is Brendan Hughes. I'm here on behalf of Appellees Google, Alphabet, and 26 Holdings. I think the fundamental issue that's being forgotten in the presentation here today is that SM Kids Appellant only claims rights in the contract, only claims the ability to enforce the contract as a result of a series of trademark assignments. This is a trademark that was not in use for... Is that their claim? They're claiming that you violated a contract. Yes, they were not a party to that contract. They were... They were attempting to enforce the contract that was entered into 2008. Appellant SM Kids was formed two weeks before filing this lawsuit, and it received alleged rights to enforce this contract only as a result of trademark assignments leading from the original predecessor back in 2008 through three subsequent assignments, heading all the way up to 2018. What does that have to do with whether there's jurisdiction and whether they've stated a claim? So, as far as whether or not there's jurisdiction, the lower court was attempting to identify whether or not the plaintiff had suffered an actual injury in fact. For the plaintiff to suffer an injury in fact, they had to be the rightful owner of the Google's mark and therefore be able to enforce the trademark coexistence agreement. That's the sort of inherent difference here in this type of case versus other types of contract cases. This is a trademark coexistence agreement that essentially can only be enforced, or really can only be enforced by the trademark owner. This is a SM Kids claims rights dating back 10 years through three separate assignments. During each period of assignment, there was no use. As counsel explained, use of a mark is what's critical here. When a mark is used, it develops goodwill. Why isn't this jumping ahead a little bit? Why would... Why would... Why is this... Why don't we... It's a merits decision whether or not you get any... They can get any money, get an injunction. Why not? Typically, in a trademark infringement action, brought underneath the Lanham Act, the trademark plaintiff has to prove ownership of the mark. And if they fail to prove ownership of the mark, then it's dismissed on 12b1 or 12b6. And that's... That's a big or. Dismiss it on the 12b6. I mean, if they can't prove it, then they haven't stated a claim. Sure. And, Your Honour, if you... I understand how you might win on 12b6 and you might win on an assembly judgment, who knows? But it seems to me that you have to help me understand why this case diverted off onto some jurisdiction on 12b1. Yes, Your Honour. Originally, the defendants moved for a motion to dismiss under both 12b1 and 12b6. At that point, plaintiffs opposed the motion. It was at a hearing before the lower court that the lower court then asked for additional pleading and limited discovery just on 12b1. 12b1, that limited discovery proceeded, and then 12b1 was fully briefed by the parties. That's how we got to this position. What appellant is asking today, or rather, what appellant... The court never reached the issue of whether or not they had stated a claim. No, Your Honour. The lower court only felt... Adjudicated on the 12b6. It was briefed by the parties, but it was not adjudicated by the court on 12b6. It was originally presented in front of the court. The court then recognized that there was an issue with plaintiffs attempting to claim rights in the Google's mark and then being able to enforce the agreement, allowed for limited discovery that allowed us to depose plaintiff's CEO and kind of track back and look to see whether or not there was enough use over the years and over the assignments for which there were valid assignments. Where have we said that... Just to stick to the jurisdictional issue for a second, where have we said that parties... Whether a party is a party to an agreement that the party then seeks to enforce is a matter of Article III standing? When it comes to the breach of contract actions, no, those are typically found to be... As you pointed out, and especially now with Platinum Montar coming out, this seems to be the first decision by the Second Circuit. If it is a case of strict contract interpretation, then the court has found that to be a merits consideration. It's not a standing consideration. Right. So what you're saying is that there's an exception for trademark. I'm saying that there... I am saying that there should be an exception for trademark. In my line of business, there's a big difference between is and should. So is there an exception to trademark that any court has identified? There is not an exception for trademark. You're asking us to create an exception. I think that's one thing that the court can do. The other is that the court can, as you suggested, look at the facts before them that have already been revealed. This is the plaintiff, again, form 2E. Now you're switching to 12E6. Yes, Your Honor. So... And we argue that in the alternative. If this court were to look at the facts before them, were to look at the plain language of the agreement, the court would find that there's really only one allegation, I believe it's paragraph 7, in which the plaintiff makes the legal conclusory statement that I am the owner of the trademark and, you know, all rights, and therefore, you know, it says that they can enforce the contract or the trademark coexistence agreement between the parties. And it is from that that the rest of the allegations flow. There is no explanation with respect to how they got into that position, or no credible explanation anyway, as well as there is no statement demonstrating that there was continuous use over time of the mark in a commercial manner, such that you would be able to maintain rights. And again, back to that point, with any sort of assignment, when you have a string of assignments, the assignment's only effective if you've developed goodwill in the mark. A trademark cannot be separated from the goodwill. So if I have a period of time in which I have a business that is actually not offering any services, not selling any goods, there is no goodwill. Then what has happened here is then there's an assignment to another party, an assignment to another party. At each stage, the lower court determined that there was no use of the mark sufficient enough to maintain rights. And then... How long would the interruption have to be for the rights to be maintained? Yeah, so as far as the... There isn't a set guideline for how long it has to be, but essentially the court, when they look back, when Judge Schofield looked back over the 10 years from the 2007 to, I guess, 11 years, to 2018 when they filed the suit, found no sufficient commercial use. And she dissected that pretty meticulously in the order, lower cases, one year. Sorry, what did I say? You're asking us to rule on this question as a matter of law. I'm not... Explain to me how we would do that. What... Is this... Are you inviting a rule that, well... I can't tell you how long is too long, but I know it when I see it? This is... When you're assessing whether or not the mark was in use such that you were to obtain trademark rights in it, then courts look at a number of factors. They look at whether or not there was sales revenues, whether or not there was any actual rendering of services. It isn't enough just to have it on... To use a mark on a web page. You have to be rendering the service. They claim to be a digital media platform. I suppose there's interruption. Everyone concedes during the interruption none of that happened. How does that factor into a rule we're thinking about adopting? In the Lanham Act itself, if you had a period of... If it was the sole trademark owner and I had a period of non-use, as long as I had an intent to resume use, then you would maintain rights. What has happened here, though, is a period of non-use, failure to use the mark at all, and then an assignment. Failure to use the mark at all, and then assignment. Failure to use the mark at all, and then an assignment. So there was no goodwill that had been generated underneath the mark in between each one of these periods of assignments. These resulted in assignments engrossed, and assignments engrossed are therefore invalid. There is not a clean chain of title here as to why plaintiffs would be able to enforce the agreement and why plaintiffs now claim that it owns rights to the mark. I want to quickly go back. I think I might have misspoken. Obviously, I was saying that there was no use, as the lower court did, for the entire 10-year period. Perhaps I took the wrong date. Thank you. Your adversary said that, really, the interruption was only a year long, and you dispute that. That's correct, yes. Actually, there is a very helpful chart in our reply brief that we submitted down to the lower court. That's a great chart, but I'm just now looking at the complaint. So is there anything that contradicts that statement, that it was only really a year long? In fact, I don't know that there is anything in the complaint that tells us one way or the other. That's correct. There actually is no allegation in the complaint of continuous use of the mark. Is that usually fatal to a complaint in the trademark? That's correct, yes. There are a number of things that we identified in our briefing that were fatal to the pleading standard when you're pleading a trademark infringement. Is there a requirement that we've imposed that a complaint in a trademark infringement case must affirmatively assert or allege that there's been no, you know, prolonged interruption? Yes. We cited a number of cases in our briefing that relate to issues like trademark ownership, where you need to have an allegation of continuous use. You need to have allegations that show the valid chain of title. And at least on the lower court level, some of those cases, the complaints that they don't have those facts alleged then are found to be deficient. I would... Did the court below directly adjudicate this case as a 12B1 case? Yes, I think that the court below realized that there was a major issue with plaintiffs not suffering an injury in fact, and nothing changes that. There's no facts that can be alleged that have been fully examined by the court in which now we're in this situation where it's clear that plaintiffs do not own trademark rights. You just said to me, in answer to a couple of different questions, that we have not created an exception for trademark. So the court below was just, I gather, in your view, creating an exception that we have not yet recognized, and you would like us to recognize that exception. Yes, that's correct. I'm arguing that in the alternative, if you aren't willing to accept that or go down and have that exception, then you would decide it's on the 12B6. You would have courts rewrite the complaint to make it a trademark infringement? Oh, no, Your Honor. They obviously have made a calculated decision to bring a breach of contract claim instead of a trademark infringement. This would actually be an allegation or in addition to. You want to turn it into a trademark infringement. Essentially, that's what this case is because the breach of contract... Thank you, Your Honor. Thank you, Your Honors. There's really only two points, and I think... Excuse me. Are there any rights or obligations coming from the settlement agreement that are not completely and totally tied to the trademark? And I ask this question because you see in paragraph 5 of your complaint, the use of these products and services constitutes an unapprovable breach of the settlement agreement. By doing so, Google has damaged Mr. Sella's business. So isn't at least part of your claim that Mr. Sella's business has been injured? Absolutely. Section 7 requires that they not enter into the children's business, subject to certain exceptions, and the claim here is that they did. So it's a contract claim. The question of whether or not we're the correct S&E, that's exactly what all of these cases we've already talked about say is a merits question. So there's two things we're being subject to here. One is we're being subject to essentially a summary judgment argument on the facts. Google wants you to find, affirmatively here, that we have not raised a disputed issue of fact. We're not at that stage. So your adversary does say that at least you get to allege continued use because although it's a contract claim, there's a trademark element to it. I think you agreed in answer to one of my questions that there's a, you know, maybe you could call it an element, maybe you could call it something else, but this is about a trademark. That's what gives rise to your contract claim. Is that right? Not quite, Your Honor. I'll just clarify just a little tweak on it. There's really two answers. One is this is a breach of contract case. And two is even if it weren't, counsel admitted there's not a single case on a 12b1 motion that gets rid of a trademark for Article 3 standing. So it doesn't matter. Either way we have to go. I'm at the merits stage. Yes. So the claim or the argument is that you require an allegation of continued use, affirmative allegation in the complaint. And, Your Honor, the answer to that is paragraph 7 is an allegation that we are the rights holder and under the Beasley case, the Second Circuit Beasley case, that's enough. That a single allegation of assignment for a contract claim is enough to get past the pleading stage. That's where we are, the pleading stage on a contract claim. Any further? No. Thank you, Your Honors. Thank you very much. The final matter on today's calendar, United States v. Floyd, 19-1234, is submitted. That concludes today's oral argument calendar. Court is adjourned. Thank you.